SOUTHERN DISTRICT OF FLORIDA
WEST PALM DIVISION
www.flsb.uscourts.gov

In re:

**GLOBAL FINANCIAL ENTERPRISES, LLC,**          Case No.: 13-11478-EPK

     Debtor.                                                    Chapter 11

_____/

## MOTION OF GEE PARTNERSHIP HOLDINGS, LLC, FIREBRAND WIRELESS, LLC AND RGG CONSULTING, LLC FOR: (I) APPROVAL OF MEDIATED SETTLEMENT AGREEMENT; AND (II) ENFORCEMENT OF MEDIATED SETTLEMENT AGREEMENT

Comes Now GEE Partnership Holdings, LLC, Firebrand Wireless, LLC, and RGG Consulting, LLC (collectively the "Settling Creditors"), by and through their undersigned counsel Akerman LLP and Howard & Howard Attorneys PLLC, and pursuant to Bankruptcy Rule 9019 and Florida Rule of Civil Procedure 1.730, hereby file this Motion for Approval of Mediated Settlement Agreement and Enforcement of Mediated Settlement Agreement and states as follows:

**I.      Background**

    1.      In 2011 and 2012, the Debtor defrauded GEE Partnership Holdings, LLC ("GEE"), Firebrand Wireless LLC ("Firebrand") and RGG Consulting ("RGG"), and breached various contracts with them involving cell phones, smartphones, and tablets. The Debtor's behavior cost GEE more than $10 Million in damages, Firebrand more than $8.6 Million in damages, and RGG nearly $5 Million in damages. Each has filed a proof of claim; they are the only non-insider creditors of the Debtor. GEE's claim is Claim #3 (the "GEE Claim"), Firebrand's claim is Claim #5 (the "Firebrand Claim") and RGG's claim is Claim #4 (the 'RGG Claim"): said claims and the exhibits attached thereto are incorporated herein by reference. The

GEE Claim, the Firebrand Claim and the RGG Claim are hereinafter collectively called "the Settling Creditors' Claims".

2.     The Debtor filed Chapter 11 on January 22, 2013 so that its principal, Sam Halim, could avoid testifying in the Wayne County Circuit Court in Detroit, Michigan where Gee had filed suit (Case No. 12-013366-CK) against the Debtor in October, 2012 (the "Detroit Lawsuit"). The Detroit Lawsuit was based on the Debtor's undisputed failure to pay GEE the $2.5 Million that it owed for customized cell phones (the "Cell Phones"- defined more specifically in paragraph 20 of this Motion) pursuant to the letter agreement that is attached as Exhibit 1 to the Gee Claim (the "Letter Agreement"). Because of GEE's strong likelihood of success on the merits, and because the Debtor was on the verge of shipping the customized cell phones to Turkey without paying what it owed to GEE, the Wayne County Circuit Court entered a temporary restraining order in the Detroit Lawsuit prohibiting the Debtor from shipping or disposing of the cell phones. Thereafter the Debtor, through its principal Sam Halim, began a scheme of delay via filings that GEE considers to be improper and misrepresentations to both Gee and the Wayne County Circuit Court. For example:

- On the eve of the preliminary injunction hearing, the Debtor filed defective removal papers in the U.S. District Court for the Eastern District of Michigan (Case No.2:12-cv-14718). That case was ultimately remanded to the Wayne County Circuit Court, but only after the Federal Court: (1) recognized that the removal papers were defective on their face, (2) questioned the last-minute nature of the removal, and (3) requested the parties to brief the issue of sanctions.

- Upon remand to the Wayne County Circuit Court, the Debtor (through Sam Halim's sworn declarations) misrepresented to the Court that *a sale of the cell phones at $352.00 per phone was imminent as of November 2012.* The Debtor continued to use these false statement over a two month span (into January of 2013) to avoid a preliminary injunction hearing in the Detroit Court and to successfully oppose Gee's motion that would have sold at $65 per unit with the proceeds to be placed in escrow. These same cell phones are currently the Debtor's only asset and are the subject of the Auction Sale Procedures Motion (Dkt# 76) which contemplates a stalking horse bid of $336,000 for the 16,000 cell phones, which computes to just $ 21/phone.

2

- The Court in the Detroit Lawsuit began to question the Debtor and Halim regarding their inability to produce a shred of documentary evidence to support the allegedly imminent sale of the 16,000 phones at $352.00/phone. The Court ordered the Debtor to appear for several conferences, which were adjourned at Halim's request based on alleged "personal conflicts". Ultimately, the Court in the Detroit Lawsuit ordered Sam Halim to appear to appear on January 23, 2013 for a settlement conference and hearing.  To avoid having to answer to the Court or Gee, Sam Halim caused the Debtor to file Chapter 11 in this bankruptcy on January 23, 2013, less than 30 minutes before the conference in the Detroit Lawsuit.

3.      Despite entering into multi-million dollar transactions for the cell phones, smartphones and tablets described below, and despite receiving millions of dollars in products and advances from GEE, Firebrand, and RGG, the Debtor is a shell entity that Sam Halim used in order to swindle millions from others.   Since the Debtor filed bankruptcy Gee has learned that the Debtor has no assets (other than the now obsolete cell phones), no financial statements, and has not filed tax returns since its formation.

4.      The Debtor has also acknowledged more that $1 Million in unsubstantiated payments to insiders within one year of the filing of this Chapter 11 and has produced two years of bank records reflecting approximately $777,885 in "international wire transfers" for which Sam Halim cannot provide an explanation or accounting.

5.      The Debtor's misconduct and lack of respect for the Court in the Detroit Lawsuit has spilled over into these proceedings, as the Debtor has been sanctioned $9,000 for its inadequate discovery responses (Dkt. # 77).

6.      Subsequent to its Chapter 11 filing, on June 6, 2013, the Debtor filed its Disclosure Statement and Chapter 11 Plan of Liquidation (the "Plan") (Dkt. #s 62 and 63). On July 1, 2013, the Debtor also filed its Motion to Sell Substantially all of its Assets which included primarily the Cell Phones (the "Sale Motion") (Dkt. # 80).

7.      The Disclosure Statement is inadequate on its face and the Debtor's Chapter 11 Plan is unconfirmable for a number of reasons as more fully set forth in the Settling Creditors' Objection to Disclosure Statement on file with the Court (Dkt. No. 119).  The Settling Creditors also had significant objections it intended to raise in opposition to the Sale Motion.

8.      Knowing that it faced significant opposition to its Chapter 11 Plan and related issues, including the Sale Motion and litigation over claims against insiders,  the Debtor and its principal Sam Halim, agreed to participate in mediation with the Settling Creditors with the Honorable Paul G. Hyman acting as mediator.   The Agreed Ex Parte Motion to Schedule Mediation or Judicial Settlement Conference (Dkt. # 81) was approved by this Court by Order dated July 3, 2013 (Dkt. # 84).

## II.    The Mediation and Settlement

9.      On July 24, 2013 U.S. Bankruptcy Judge Paul G. Hyman conducted a settlement conference (the "Hyman Settlement Conference") in an attempt to resolve, *inter alia*, various disputes arising from: (i) proofs of claim (in excess of an aggregate of $23 Million) filed by the Settling Creditors, and (ii) allegations by the Settling Creditors that the Debtor made fraudulent transfers and preferential transfers to North America Physicians, Inc. ("NAPI") and that NAPI, in turn, transferred the money to Sam Halim, Jr. ("Halim") and Yilmaz Kalkavan ("Kalkavan").

10.     The following persons and entities attended the Hyman Settlement Conference: the Debtor through its principal Sam Halim and its counsel Bradley Shraiberg, Sam Halim individually on behalf of himself and his related company NAPI, Inc., and his counsel, Les Osborne, and GEE through its principal Ron Garriques (individually and as an authorized representative for each of the Settling Creditors), and Eyal Berger of Akerman, LLP and Scott Frost of Howard & Howard Attorneys PLLC, counsel for the Settling Creditors.

11.    At the Hyman Settlement Conference and after a full day of contentious mediation, a global settlement was reached and memorialized in a handwritten Memorandum of Understanding (the "Memorandum of Understanding": copy attached and incorporated as **Exhibit 1**) signed by Halim, his counsel, the Debtor, Debtor's counsel, Ron Garriques (for himself and on behalf of each of the Settling Creditors) and counsel for the Settling Creditors.

12.    Further evidence that the matter was consensually resolved is evidenced by Judge Hyman's Report of Settlement Facilitator (Dkt.# 103) and the Debtor's Notice of Cancellation of Auction (Dkt.# 99).

13.    The material terms of the Memorandum of Understanding were as follows:

- Sam Halim would pay $300,000 directly to GEE in two installments to satisfy his liability for insider fraudulent transfers and all other potential claims;

- If Sam Halim failed to pay the $300,000, then Sam Halim would consent to entry of a judgment in the amount of $450,000, less any payments made, with such judgment being nondischargeable in any bankruptcy action filed by Sam Halim;

- The Debtor would release its interest in the Cell Phones and deliver them to GEE in satisfaction of the claims of the Settling Creditors;

- The Debtor's Chapter 11 case would be dismissed and all pending litigations would be dismissed.[1]

14.    After the Hyman Settlement Conference was concluded, counsel for the Settling Creditors and counsel for the Debtor attempted to prepare a formal settlement agreement memorializing the material terms of the Memorandum of Understanding, but counsel for Halim insisted that additional "mechanical" provisions be inserted; yet the material terms were always the same, ie. Sam Halim paying money to GEE in satisfaction of insider claims and fraud claims of GEE, the transfer of the Cell Phones to GEE and the dismissal of the Chapter 11 case.

---

[1] The Memorandum of Understanding also included a provision that the Debtor's other insider, Yilmaz Kalkavan would also pay GEE the sum of $150,000 in installments in exchange for a release; however, Mr. Kalkavan did not execute the Memorandum of Understanding and the Settling Creditors do not seek enforcement at this time against Mr. Kalkavan.

15.    Over the next few weeks, the Debtor and Halim, on the one hand, and the Settling Creditors and Ron Garriques, on the other hand, negotiated and reached a modified settlement (the "Modified Settlement") which contained most of the material terms of the Memorandum of Understanding including the material terms of the agreement which were the transfer of the Cell Phones to GEE, the payment by Halim of $350,000 to GEE and the dismissal of the Debtor's Chapter 11 case; however, the Debtor and Sam Halim now refuse to consummate the Memorandum of Understanding or finalize the Modified Settlement.[2]

16.    Unfortunately, the Settling Creditors have incurred significant legal fees for preparing and participating in the Settlement Conference and documenting the Modified Settlement.  Now, and based on Sam Halim's egregious conduct in not performing under the Memorandum of Understanding (or Modified Settlement), the Settling Creditors are left in the lurch having incurred significant legal fees and nothing to show for it.  The transfer of the Cell Phones to GEE, which was the most material part of the settlement, has not occurred.

17.    In their objection to the Debtor's Disclosure Statement (Dkt. # 119), the Settling Creditors described that, pre-petition, Sam Halim (and the Debtor) willfully and maliciously injured the Settling Creditors by intentionally making statements that mislead them into thinking that there was still a viable contract with Yalcinlar, Ltd.

18.    In attempting to disavow or not perform under the Memorandum of Understanding, Sam Halim (and the Debtor) *again* willfully and maliciously misled the Settling Creditors into thinking that they would consummate the settlement and, based on their statements, the Settling Creditors spent significant legal fees and time in documenting the Modified Settlement.

---

[2]  The only differences between the Memorandum of Understanding pertained to the timing of the settlement payments, coordination of the transfer of the Cell Phones, the scope of the releases and other timing issues for compliance, but again, the material terms were always substantially the same.

19.     In the aftermath of the Debtor and Sam Halim now reneging on a settlement, the Settling Creditors seek enforcement of the Memorandum of Understanding that was signed at the Hyman Settlement Conference.

20.     Specifically, by this motion, the Settling Creditors seek approval and enforcement the Memorandum of Understanding, so that GEE can obtain, *inter alia*: (a) title to and delivery of the Debtor's personal property that is currently warehoused at 6800 S. Cypress, Romulus, Michigan 48174 in a facility owned and operated by Tanbar, Ltd. d/b/a SEKO Worldwide ("SEKO") consisting of: (i) approximately 16,000 HTC Microsoft 6.5 Tilt 2 cellular phones (each in a box that also contains a power charger, ear buds, carrying case and owner's manual), (ii) approximately 386 warranty replacement service stock units (bulk packaged, approximately 100 units/box), and (iii) approximately 15,000 4gb SD memory cards (the items described in (i)-(iii) above are collectively called the "Cell Phones"), and (b) a final and non-dischargeable judgment against Halim for $450,000 as described in the Memorandum of Understanding.

III.     **Basis for Relief Sought**

21.     Florida bankruptcy courts have held that a bankruptcy court possesses the inherent authority to enforce a settlement agreement entered into by parties in a pending case. *In re Rolsafe International, LLC*, 477 B.R. 884, 901 (Bankr. M.D. Fla. 2012). In doing so, bankruptcy courts must look to state law which governs the validity and enforceability of settlement agreements in bankruptcy. *Id. at 901*.

22.     Rule 1.730 of the Florida Rules of Civil Procedure governs the enforcement of settlement agreements reached at mediation and provides as follows:

   **a) No Agreement.** If the parties do not reach an agreement as to any matter as a result of mediation, the mediator shall report the lack of an agreement to the court without comment or recommendation. With the consent of the parties, the mediator's report may also identify any pending

motions or outstanding legal issues, discovery process, or other action by any party which, if resolved or completed, would facilitate the possibility of a settlement.

**(b) Agreement. If a partial or final agreement is reached, it shall be reduced to writing and signed by the parties and their counsel, if any.** The agreement shall be filed when required by law or with the parties. consent. A report of the agreement shall be submitted to the court or a stipulation of dismissal shall be filed. By stipulation of the parties, the agreement may be electronically or stenographically recorded. In such event, the transcript may be filed with the court. The mediator shall report the existence of the signed or transcribed agreement to the court without comment within 10 days thereof. No agreement under this rule shall be reported to the court except as provided herein.

**(c) Imposition of Sanctions.** In the event of any breach or failure to perform under the agreement, **the court upon motion may impose sanctions, including costs, attorneys' fees, or other appropriate remedies including entry of judgment on the agreement** (emphasis added).

24.     Here, the Memorandum of Understanding constitutes an enforceable settlement agreement under Florida Rules of Civil Procedure 1.730 as it was agreed upon by all parties, reduced to writing and actually signed by all parties and their counsel.  It is therefore an enforceable agreement which this Court can enforce under Florida Rules of Civil Procedure 1.730(c). *See Gordon v. Royal Caribbean Cruises, Ltd.,* 641 So. 2d 515, 517 (Fla. 3rd DCA 1994 (settlement agreements are enforceable under Rule 1.730(c) if reduced to writing and executed by both parties and their respective counsel).

25.     Accordingly, based on the precedent described above, the Memorandum of Understanding reached at the Hyman Mediation is enforceable and this Court should either compel performance by Sam Halim and the Debtor or enter appropriate orders necessary to relieve the Settling Creditors of the egregious conduct of the Debtor and Sam Halim and provide the Settling Creditors the benefit of their bargain.

IV.    **Approval of the Memorandum of Understanding and/or the Modified Settlement is in the Best Interest of the Estate**

26.    Bankruptcy Rule 9019(a) provides that: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct." Fed. R. Bankr. P. 9019(a).

27.    Approval of a settlement in a bankruptcy proceeding is within the sole discretion of the Court. *In re Arrow Air*, 85 BR 891 (Bankr. S.D. Fla. 1988). The standards for approval are well settled and require the Court to inquire into the reasonableness of the proposed settlement. *See, e.g., Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir.), *cert. denied, sub nom., Cosoff v. Rodman*, 464 U.S. 822 (1983); *Florida Trailer and Equip. Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960). The inquiry need only determine whether the settlement falls below the lowest point of the range of reasonableness. *See W.T. Grant Co.*, 699 F.2d at 608.

28.    In the Eleventh Circuit, the Court must consider the following factors in determining whether to approve the settlement (i) the probability of success in the litigation; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (iv) the paramount interest of the creditors and proper deference to their reasonable views in the premises. *In re Justice Oaks, II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir. 1990), *cert. denied*, 498 U.S. 959 (1990) (establishing the legal standard for approval of settlements). *See also In re Martin*, 91 F.3d 389 (3rd Cir. 1996); *In re Louise's Inc.*, 211 B.R. 798 (D. Del. 1997).

In evaluating the settlement reached, this Court—

need not rest its decision whether to approve a settlement upon a resolution of ultimate factual and legal issues which underlie the disputes that are proposed to be compromised. *In re Teltronics Services, Inc.*, *supra.* In a Fifth Circuit decision which is binding on this Court, *Florida Trailer and Equipment Company v. Deal*, 284 F.2d 567, 571 (5th Cir.1960), the Court stated:

> Of course, the approval of a proposed settlement does not depend upon establishing as a matter of legal certainty that the subject claim or counterclaim is or is not worthless or valuable. The probable outcome in the event of litigation, the relative advantages and disadvantages are, of course, relevant factors for evaluation. *But the very uncertainties of litigation, as well as the avoidance of wasteful litigation and expense, lay behind the Congressional infusion of a power to compromise. This is a recognition of the policy of the law generally to encourage settlements. This could hardly be achieved if the test on hearing for approval meant establishing success or failure to a certainty. Parties would be hesitant to explore the likelihood of settlement apprehensive as they would then be that the application for approval would necessarily result in a judicial determination that there was no escape from liability or no hope of recovery and hence no basis for a compromise.* Thus, this Court need not resolve each disputed matter in determining the propriety of the settlement; rather, the Court may, and should, make a pragmatic decision on the basis of all equitable factors. *In re Holywell Corp.*, 93 B.R. 291 (Bankr. S.D. Fla. 1988) (emphasis in original).

29.    Here, approval of the Memorandum of Understanding is clearly in the best interest of the Estate and satisfies all of the *Justice Oaks* factors.    First, approval of the Memorandum of Understanding would resolve substantially all of the Debtor's complex legal issues with its only true creditors which represent approximately 99% of its creditor body (the rest of the Debtor's alleged creditors are either insiders or have not made any appearance in this case)[3]; Second, the benefits of proceeding with the compromise far outweigh the potential benefits of the Debtor litigating with the Settling Creditors over unwinnable plan confirmation

---

[3]    The only three non-insider creditors affected by this Settlement are Claim No. 2 of BLM Teknoljler Servs Hzmetler, Ltd in the amount of $43,558.17, Claim No. 6 of Tekofaks Teknoloji in the amount of $240,144.32; and Claim No. 1 of Tanbar Ltd. d/b/a SEKO Worldwide in the amount of $4716.74; yet all of these claims combined equal less than 1% of the total claims filed in the case by the Settling Creditors and none of these entities have filed appearances in this case or otherwise participated in this case. Of course, the Settling Creditors are providing them notice of this Motion by both International mail and by e-mail as identified on the proof of claims. Last, as it relates to Seko, it will be paid in full by the Settling Creditors for storage charges up to the release of the Cell Phones so it should not have any objection as any lien rights it possesses will be satisfied.

issues and claims against insiders; Third, judicial resources will be saved as a result of enforcing the settlements as all of the Debtor's tangible assets will be disposed of in an orderly fashion to its largest (by far) creditor group and the Court will not have to spend time dealing with essentially a two party dispute and contested objections to the Disclosure Statement, Plan issues, sale issues and significant insider litigation over the next few years; 4) the probabilities of success also weigh in favor of approving the settlement as the Debtor has filed a patently unconfirmable plan which cannot be confirmed over the objection of the Settling Creditors and to which would otherwise expose the Debtor's principals to years of defending fraudulent transfer cases and other insider claims; and 5) the paramount interests of creditors support approval of the settlement as over 99% of the non-insider creditor body (ie. the Settling Creditors) approves and supports this settlement.

30.    Finally, it is important to note that this compromise was developed and negotiated with the aid of knowledgeable and competent counsel with significant expertise in complex litigation, and bankruptcy issues.

31.    Based upon the foregoing, the Settling Creditors respectfully submit that the compromise falls well within the "range of reasonableness" and satisfies the legal standard set forth in *Justice Oaks*. Accordingly, the Settling Creditors requests that the compromise be approved.

32.    A proposed form of Order is attached hereto as Exhibit "2" which the Settling Creditors believe adequately provides for the relief sought by the Settling Creditors and which is necessary for enforcement of the Memorandum of Understanding.

33.    Undersigned counsel certifies that he has served a copy of this Motion and will serve a copy of any Order entered by the Court on any party who may have an interest in this

matter or who otherwise could be effected by an Order approving this Motion so interested parties will have a clear opportunity to object.

      **WHEREFORE**, the Settling Creditors request that this Court enter an order substantially similar to Exhibit 2 attached, so that GEE obtains, *inter alia,* a non-dischargeable and final judgment against Sam Halim, Jr. and title to and delivery of the Cellular Phones.  The Settling Creditors also request such other and further relief as this Court deems proper.

Dated: November 13, 2013

                             Respectfully submitted,

                             **AKERMAN LLP**

                             Las Olas Centre II, Suite 1600
                             350 East Las Olas Boulevard
                             Fort Lauderdale, FL  33301-2229
                             Phone:  (954) 463-2700
                             Fax:  (954) 463-2224

                             By:  /s/ D. Brett Marks
                                D. Brett Marks, Esq.
                                Florida Bar No: 99635
                                Email: brett.marks@akerman.com
                                Catherine E. Douglas, Esq.
                                Florida Bar No. 85843
                                Email: catherine.douglas@akerman.com

                             *-and-*

                             **HOWARD & HOWARD ATTORNEYS PLLC**
                             By:  Scott Frost
                             200 South Michigan Avenue, Suite 1100
                             Chicago, IL  60604
                             Phone:  (312) 456-3447
                             Fax:  (312) 939-5617
                             Email: SFrost @howardandhoward.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served this 13th

day of November, 2013 to all parties via electronic filings pursuant to CM/ECF; U.S. Mail or

E-mail as listed on the attached Service List.

By: /s/ D. Brett Marks
D. Brett Marks

## SERVICE LIST

**13-11478-EPK Notice will be electronically mailed to:**

Eyal Berger, Esq. on behalf of Interested Party GEE Partnership Holdings, LLC
eyal.berger@akerman.com, jeanette.martinez@akerman.com

Patrick R Dorsey on behalf of Debtor Global Financial Enterprises, LLC
pdorsey@sfl-pa.com, vchapkin@sfl-pa.com;dwoodall@sfl-pa.com;scusack@sfl-pa.com

Catherine E Douglas on behalf of Debtor Global Financial Enterprises, LLC
catherine.douglas@akerman.com, jeanette.martinez@akerman.com

Catherine E Douglas on behalf of Interested Party GEE Partnership Holdings, LLC
catherine.douglas@akerman.com, jeanette.martinez@akerman.com

David B Marks on behalf of Interested Party GEE Partnership Holdings, LLC
brett.marks@akerman.com, charlene.cerda@akerman.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Leslie S. Osborne, Esq. on behalf of Interested Party Nabila Halim
rappaport@kennethrappaportlawoffice.com

Leslie S. Osborne, Esq. on behalf of Interested Party Sam Halim, Sr.
rappaport@kennethrappaportlawoffice.com

Lenore M Rosetto on behalf of Debtor Global Financial Enterprises, LLC
lrosetto@sfl-pa.com, scusack@sfl-pa.com

Bradley S Shraiberg on behalf of Debtor Global Financial Enterprises, LLC
bshraiberg@sfl-pa.com, dwoodall@sfl-pa.com;vchapkin@sfl-pa.com;lrosetto@sfl-pa.com;scusack@sfl-pa.com;blee@sfl-pa.com

**13-11478-EPK Notice will not be electronically mailed to:**

Scott C. Frost on behalf of Interested Party GEE Partnership Holdings, LLC
200 S Michigan Ave #1100
Chicago, IL 60604

Lisa S Gretchko on behalf of Interested Party GEE Partnership Holdings, LLC
450 W 4 St
Royal Oak, MI 48067

Miles T. Macik on behalf of Interested Party GEE Partnership Holdings, LLC
450 W Fourth St
Royal Oak, MI 48067

James F Martin
ACM Capital Partners
200 South Biscayne Blvd
7th Flr
Miami, FL 33131

**Via Email:**

BLM TEKNOLOJLER SERVS HZMETLER LTD. T
tugba.erndr@hotmail.com

Global Financial Enterprises, LLC
6420 Congress Avenue, Suite 1800
Boca Raton, FL 33487-2811

Al Huda Insaat
Kizil Serce Sok no. 19-20
Goksu Deresi Anadolu Hisar
Instanbul, Turkey

BLM TEKNOLOJLER SERVS HZMETLER LTD. T.
Orhanl Mah. Cardak sk. no:1 Tuzla/stanbu
istanbul, TN 34

BT Servis: Bilisim Teknolojileri Servis
Hizmetleri Ltd. Sti.
Orhanli Mh.  ardak Sk. No : 1
Tuzla - ISTANBUL

David Kahan, Esq.
David Kahan, P.A.
6420 Congress Ave., Suite 1800
Boca Raton, FL 33487-2811

Fire Brand Wireless
928 Donata Court
Lake Zurich, IL 60047-5025

Firebrand Wireless LLC
c/o Akerman Senterfitt
350 E. Las Olas Blvd. - #1600
Fort Lauderdale, FL 33301-4247

Florida Department of Revenue
Florida Dept. of Revenue
5050 W. Tennessee St.
Tallahassee, FL 32399-0135

GEE Partnership Holdings, LLC
c/o Miles T. Macik, Mark W. Peyser
450 W. 4th Street
Royal Oak, MI 48067-2557

GBE Partnership Holdings, LLC
c/o Miles T. Macik, Patrick McCarthy,
Mark W. Peyser
101 N. Main Street, Ste 610
Ann Arbor, MI 48104-1498

Gee Partnership Holdings, LLC
c/o Akerman Senterfitt
350 E. Las Olas Blvd. - #1600
Fort Lauderdale, FL 33301-4247

Internal Revenue Service
Attn: Special Procedures
P.O. Box 34045
Stop 572
Jacksonville, FL 32202

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Miller Canfield P.A.
c/o Larry J. Saylor, Emma T. Chen
150 West Jefferson, Suite 2500
Detroit, MI 48226-4432

My Screen Mobile, Inc.
70 Yorkville Avenue, Suite 300
Toronto, Ontario Canada M5R 1B9

NAPI
c/o David Kahan, P.A.
6420 Congress Avenue
Suite 1800
Boca Raton, FL 33487-2811

Office of Attorney General
State of Florida
The Capitol PL-01
Tallahassee, FL 32399-1050

Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130-1614

Palm Beach County Tax Collector
301 North Olive Ave
West Palm Beach, FL 33401-4791

RGG Consulting LLC
c/o Akerman Senterfitt
350 E. Las Olas Blvd. - #1600
Fort Lauderdale, FL 33301-4247

SEC Headquarters
100 F Street, NE
Washington, DC 20549-2001

Sam Halim
c/o David Kahan, P.A.
6420 Congress Avenue, Suite 1800
Boca Raton, FL 33487-2811

Securities and Exchange Commission
801 Brickell Ave., Suite 1800
Miami, FL 33131-4901

Seref Akin
Akin Family
4455 NW 24th Ave
Boca Raton, FL 33431-8408

Tanbar Ltd. d/b/a SEKO Worldwide
6800 S. Cypress
Romulus, MI 48174-3550

Tekofaks Teknoloji: Tekofaks Teknoloji
Urunleri Paz. A.S. / Tekofaks Technology
Products Marketing Co.
Ayazaga Mah. Mezarlik Sk. No:1
34396 Sisli, Istanbul, Turkey

US Attorney Southern District of Florida
500 East Broward Boulevard
Fort Lauderdale, FL 33394-3000

United States Attorney General's Office
US Department of Justice
950 Pennsylvania Avenue
Washington, DC 20530-0001

Yilmaz Kalkavan
1202 E. Hillsboro Blvd
Deerfield Beach, FL 33441-4201

Bradley S Shraiberg
2385 NW Executive Center Dr. #300
Boca Raton, FL 33431-8530

Catherine E Douglas
350 E Las Olas Blvd # 1600
Ft Lauderdale, FL 33301-4247

James F Martin
ACM Capital Partners
200 South Biscayne Blvd
7th Flr
Miami, FL 33131-5351

Lenore M Rosetto
2385 NW Executive Ctr Dr # 300
Boca Raton, FL 33431-8530

Nabila Halim
c/o Les S Osborne, Esq
Rappaport Osborne & Rappaport, PL
1300 N Federal Hwy, #203
Boca Raton, FL 33432-2848

Patrick R Dorsey
2385 NW Executive Ctr Dr # 300
Boca Raton, FL 33431-8530

Sam Halim Sr.
c/o Les S Osborne, Esq.
Rappaport Osborne & Rappaport, PL
1300 N Federal Hwy, #203
Boca Raton, FL 33432-2848

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)GEE Partnership Holdings, LLC

(u)West Palm Beach

(u)Seref Akin
Akin Famly

(u)Yilmaz Kalkavan

End of Label Matrix
Mailable recipients      36
Bypassed recipients       4
Total                    40

# EXHIBIT 1

Memorandum of Understanding

1) Sam Halim, Jr. agrees to pay Gee Partnership Holdings, LLC (Gee), or an entity of Gee's choosing, $50,000.00 by December 15, 2013, and $50,000 by June 15, 2014.

2) If Sam Halim Jr. fails to pay as aforesaid, Gee is is entitled to a final judgment in the amount of $450,000 less any payments made (either by Sam Halim Jr. or Yilmaz Kalkavan).

3) Said judgment will be determined to be non-dischargeable under 11 U.S.C. § 523.

4) Yilmaz Kalkavan agrees to pay Gee or an entity of Gee's choosing $150,000.00 in monthly installments of $10,000, commencing on 8/15/13, and continuing for fourteen months thereafter.

5) Global Financing Enterprises, LLC ("GloFE") will deliver the 16,000 HTC Microsoft 6.5 Tilt 2 Cellular phones presently warehoused in Romulus, Michigan to Gee, or an entity of Gee's choosing on or before August 15, 2013.

-1-

6) Sam Halim, Jnr. will advise Yalginlar, Ltd. in writing, that Gee, with dermyer is in possession, control, and is the legal title holder of three (3)000 phones

7) Gee, GFE, and Firebrand Wireless, LLC will utilize their best efforts to dismiss the GFE Chapter 11 proceeding. IF said proceeding is not dismissed, this Agreement shall be deemed null and void.

8) All pending litigation shall be stayed until this settlement is approved.

9) UPON FULL PAYMENT OF ALL SUMS DUE UNDER TP 1, SAM HALIM, JR SHALL RECIEVE A GENERAL ROLEASE OF ANY CLAIMS AGAINST HIM BY ANY PARTY TO THIS AGREEMENT

10) UPON FULL PAYMENT OF ALL SUMS DUE UNDER TP Y OF THIS AGREEMENT, YALGMAZ KALKAVAN SHALL RECIEVE A GENERAL RELEASE OF ANY CLAIMS AGAINST HIM BY ANY PARTY TO THIS AGREEMENT

-2-

Dismissal of the Bankruptcy    S.H.

11. Upon approval ~~of the Agreement~~, or ~~not result~~
~~Formalized Transfer~~, ALL LITIGATION AND CLAIMS
SHALL BE DISMISSED, and THERE SHALL BE NO LIABILITY
S.H.    BETWEEN THE PARTIES, EXCEPT AS SET FORTH HEREIN.

S.H.

12. This Memorandum Shall be formalized in a Written Settlement
Agreement.

Sam Halim    7/24/13    _Sam Halim_    7/24/13

SAM HALIM JR.    MANAGING MEMBER GFE

TBSC

Brad Shraiberg

Los Osborne, GFE    Atty X Debtor

Atty for Halim

RCG Consulting/Capital

7/24/13    ........................ PLLC
Attorney for GFE, RCG

Ronald G.    ................ Firebrand Wireless, LLC.

7/24/13

GFE Partnership Holdings
7/24/13

Firebrand Wireless
7/24/13

-3-

# EXHIBIT 2

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM DIVISION
www.flsb.uscourts.gov

In re:

GLOBAL FINANCIAL ENTERPRISES, LLC,                    Case No.: 13-11478-EPK

    Debtor.                                               Chapter 11

_____/

**ORDER GRANTING MOTION OF GEE PARTNERSHIP HOLDINGS, LLC,
FIREBRAND WIRELESS, LLC AND RGG CONSULTING, LLC FOR: (I) APPROVAL
OF MEDIATED SETTLEMENT AGREEMENT; AND (II)  ENFORCEMENT OF
MEDIATED SETTLEMENT AGREEMENT (D.E.____)**

THIS MATTER came before the Court for hearing on December ____2013,  at _:__ a.m.

upon the Motion of GEE Partnership Holdings, LLC, Firebrand Wireless, LLC and RGG

Consulting, LLC's 's For: (I) Approval of Mediated settlement Agreement; and (II) Enforcement

of Mediated Settlement Agreement) (the "Enforcement Motion") (D.E. ____).  The Court having

{27470815;1}

reviewed the Enforcement Motion, having heard oral arguments and statements from counsel for the Debtor and Settling Creditors, having considered the record in this case, noting that service of the Motion was due and sufficient, and finding that the Settlement Agreement satisfies the standards for such settlements as set forth by the Eleventh Circuit in *In re Justice Oaks II, Ltd.,* 898 F.2d 1544 (11th Cir. 1990) and is in the best interest of all creditors and the bankruptcy estates, does make the following findings of fact and conclusions of law:

## I.    **FINDINGS OF FACT**

On July 24, 2013 Sam Halim, Jr., his counsel, Global Financial Enterprises, LLC ("GFE" or the "Debtor"), Debtor's counsel, Ron Garriques (for himself and as an authorized representative of GEE Partnership Holdings, LLC, Firebrand Wireless, LLC, and RGG Consulting, LLC which entities are, collectively, the "Settling Creditors"), and counsel for the Settling Creditors attended a Judicial Settlement Conference with U.S. Bankruptcy Judge Paul G. Hyman (the "Hyman Settlement Conference") in an attempt to resolve, among other things, various disputes arising from proofs of claim in excess of $23 Million filed by the Settling Creditors and allegations that the Debtor made fraudulent transfers and preferential transfers to North America Physicians, Inc. ("NAPI") and that NAPI, in turn, transferred the money to Sam Halim, Jr. and Yilmaz Kalkavan ("Kalkavan"). At that Hyman Settlement Conference, a resolution was reached and memorialized in a handwritten Memorandum of Understanding (the "Memorandum of Understanding") signed by Sam Halim, Jr., his counsel, the Debtor, Debtor's counsel, Ron Garriques (for himself and on behalf of each of the Settling Creditors) and counsel for the Settling Creditors.  After the Hyman Settlement Conference, the foregoing parties attempted to prepare a formal settlement agreement, but counsel for Sam Halim, Jr. insisted that additional provisions be inserted so the Debtor and Sam Halim, Jr. on the one hand, and the Settling Creditors and Ron Garriques, on the other hand, reached a modified settlement (the

"Modified Settlement").  Based on Sam Halim, Jr.'s oral agreement to the Modified Settlement, counsel for the Settling Creditors invested significant resources in documenting the Modified Settlement.  Sam Halim, Jr. and the Debtor reneged on the Memorandum of Understanding and Modified Settlement after the Settling Creditors incurred significant fees in drafting the settlement documents and before the Debtor and Sam Halim, Jr. signed the settlement documents regarding the Modified Settlement or funded the $350,000 (US) to be paid to GEE pursuant to the Modified Settlement.   This Court has reviewed the Settling Creditors' objection to the Debtor's Disclosure Statement (Dkt. #119; "Disclosure Statement Objection") and finds that Sam Halim, Jr. and the Debtor have shown a pattern of willfully and maliciously injuring the Settling Creditors by intentionally misleading them, including: (i) Sam Halim Jr.'s statements described in Disclosure Statement Objection that misled the Settling Creditors into thinking that there was still a viable contract with Yalcinlar, Ltd. and (ii) statements by the Debtor and Sam Halim, Jr. as described in the Enforcement Motion (defined below) that willfully and maliciously misled the Settling Creditors into thinking that they would consummate the Memorandum of Understanding, based on which the Settling Creditors spent significant legal fees and time in documenting the agreed upon settlement terms.

On November __, 2013 the Settling Creditors filed a Motion for Enforcement of the Memorandum of Understanding (the "Enforcement Motion"). This Court has jurisdiction over the Enforcement Motion and over Sam Halim, Jr. based on his participation in the Hyman Settlement Conference.  This Court does not have jurisdiction to enforce the provisions of the Memorandum of Understanding that relate to Yilmaz Kalkavan because neither he nor his counsel attended the Hyman Settlement Conference or signed the Memorandum of Understanding.  Based on the certificate of service filed with this Court, the Enforcement Motion

(together with a notice and opportunity to respond) was properly served on all interested parties including the Debtor, its counsel, Sam Halim, Jr. and his counsel.

## II.    CONCLUSIONS OF LAW

NOW, THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED that the Enforcement Motion is granted and the Settlement is Approved.

IT IS FURTHER ORDERED that judgment is entered in favor of Gee Partnership Holdings, LLC against Sam Halim, Jr. ("Halim") in the amount of $300,000 (US), and Halim is ordered to pay GEE immediately available US funds as follows:   $250,000 on or before December 15, 2013, and $50,000 on or before June 15, 2014 ("Judgment Installments").   It is further ordered that if Sam Halim, Jr. fails to timely or fully pay either of the Judgment Installments to GEE then, consistent with the Memorandum of Understanding, upon GEE or its counsel filing an affidavit with this Court affirming that one or both of the Judgment Installments was not timely paid in full, the amount of the foregoing judgment against Sam Halim, Jr. shall be increased to $450,00 (US), ("Increased Judgment") *less* any amount of the Judgment Installments previously paid to GEE by Halim or by Kalkavan, and execution on the Increased Judgment shall issue forthwith.

IT IS FURTHER ORDERED that, pursuant to 11 U.S.C. §523(a)(6), the foregoing judgment against Sam Halim, Jr. is hereby found and determined to be non-dischargeable in any bankruptcy case filed by or against Sam Halim, Jr.

IT IS FURTHER ORDERED that, because Sam Halim, Jr. signed the Memorandum of Understanding, he has consented to entry of a non-dischargeable judgment against him and said judgment is hereby final.

IT IS FURTHER ORDERED that if Halim: (i) timely pays the Judgment Installments or (ii) pays GEE the Increased Judgment Amount then, upon the last of the foregoing to occur, the

Settling Creditors shall be deemed to have released Sam Halim, Jr. from all pre-petition claims that they (or any of them) might have against Halim.

IT IS FURTHER ORDERED that all of the Debtor's following personal property that is currently warehoused at 6800 S. Cypress, Romulus, Michigan 48174 in a facility owned and operated by Tanbar, Ltd. d/b/a SEKO Worldwide ("SEKO") shall be immediately delivered to GEE or its designee upon payment to SEKO of all amounts owing to SEKO regarding the said personal property: (i) approximately 16,000 HTC Microsoft 6.5 Tilt 2 cellular phones (each in a box that also contains a power charger, ear buds, carrying case and owner's manual), (ii) approximately 386 warranty replacement service stock units (bulk packaged, approximately 100 units/box), and (iii) approximately 15,000 4gb SD memory cards (the items described in (i)-(iii) above are hereinafter collectively called the "Cellular Phones"). GEE or its designee shall immediately take possession of and shall promptly remove the Cellular Phones from SEKO's foregoing facility after tendering all unpaid storage costs for the Cellular Phones to SEKO. Risk of loss shall pass to GEE upon taking possession of the Cellular Phones.

IT IS FURTHER ORDERED that, effective as of the date of entry of this Order, the Debtor is hereby deemed to have transferred unencumbered title to and ownership of the Cellular Phones to GEE and delivery of the Cellular Phones shall be effected by GEE informing SEKO of the this Order and its provisions regarding transfer of the Cellular Phones to GEE and by GEE delivering a copy of this order to SEKO. This Order, when entered, shall authorize and direct SEKO to deliver the Cellular Phones to GEE without the need for any further documentation or order of any court whatsoever (whether state court, bankruptcy court, or other court.)

IT IS FURTHER ORDERED that, consistent with the Memorandum of Understanding, upon delivery of the Cellular Phones to GEE, Halim and/or the Debtor shall promptly advise Yalcinlar, Ltd. (or shall cause Yalcinlar to be promptly advised) that GEE is in possession of and

the legal title holder of the approximately 16,000 Cellular Phones, and Halim and the Debtor shall provide GEE and its counsel with proof of their giving said notice to Yalcinlar.

IT IS FURTHER ORDERED that, because Yilmaz Kalkavan did not attend the Hyman Settlement Conference, this Court lacks jurisdiction to enforce the terms of the Memorandum of Understanding that relate to him (whether those terms require Yilmaz Kalkavan to take action, or require other parties to the Memorandum of Understanding to take action with respect to Yilmaz Kalkavan.

IT IS FURTHER ORDERED  that, after the Cellular Phones have been delivered to GEE, the Debtor or any other interested parties including the Settling Creditors shall file a motion for dismissal of this bankruptcy case and the Settling Creditors will support said dismissal motion unless any aspect of this order or of the Memorandum of Understanding remains unfulfilled when the Debtor's motion for dismissal is filed.

IT IS FURTHER ORDERED  that the Court reserves jurisdiction to enforce the terms of this Order and the Settlement Agreement between the Parties.

###

**SUBMITTED BY:**

D. Brett Marks, Esq.
*Attorney for Settling Creditors*
Akerman LLP
350 E. Las Olas Blvd., Suite 1600
Ft. Lauderdale, Florida 33301
Telephone:  (954) 463-2700
E-Mail: brett.marks@akerman.com

Copies furnished to:
D. Brett Marks [Attorney Marks is directed to mail a conformed copy of this Order to all interested parties immediately upon receipt of this Order and shall file a certificate of service with the Clerk of the Court.]